UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| CYNTHIA LUDWIG, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COMMISSIONER OF SOCIAL SECURITY, )<br>)<br>Defendant. ) | No. 3:22-CV-223-JEM |

## **MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 10]. Now before the Court are Plaintiff's Motion for Summary Judgment [Doc. 11] and Defendant's Motion for Summary Judgment [Doc. 15]. Cynthia Ludwig ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court will **GRANT** Plaintiff's motion and **DENY** the Commissioner's motion.

### I. PROCEDURAL HISTORY

On February 13, 2018, Plaintiff filed an application for supplemental security income benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, claiming a period of disability that began on November 15, 2014 [Tr. 93]. After her application was denied initially and upon reconsideration [*id.* at 94–122], Plaintiff requested a hearing before an ALJ [*id.* at 159–60]. The ALJ held a hearing on March 26, 2020 [*Id.* at 66–92]. On April 21, 2020, the ALJ found that Plaintiff was not disabled [*Id.* at 124–36]. Plaintiff appealed the ALJ's decision to the Appeals Council [*Id.* at 143]. On December 22, 2020, the Appeals Council granted Plaintiff's request for

review and remanded the case to the ALJ for further proceedings [*Id.* at 141–44].[1] The ALJ held a second administrative hearing on May 13, 2021 [*Id.* at 34–65]. On June 28, 2021, the ALJ issued a new decision, again finding Plaintiff was not disabled [*Id.* at 12–27]. The Appeals Council denied Plaintiff's request for review of the ALJ's new decision on June 3, 2022 [*id.* at 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on June 27, 2022, seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g) [Doc. 1]. The parties have filed competing dispositive motions [Docs. 11 & 15], as well as supporting memoranda, including Plaintiff's Memorandum in Support [Doc. 12], the Commissioner's Memorandum in Support [Doc. 16], and Plaintiff's Reply Brief [Doc. 17]. This matter is now ripe for adjudication.

## II.     ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2020.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of November 15, 2014 through her date last insured of June 30, 2020 (20 CFR 404.1571 et seq.).
>
> 3. Through the date last insured, the claimant had the following severe impairments: fibromyalgia, osteoarthritis, obesity, and spine disorder (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part

---

[1]     The Appeals Council remanded the decision for further evaluation of Plaintiff's symptoms, the medical opinion evidence, and the nature and limiting effects of Plaintiff's fibromyalgia [Tr. 144].

404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to lift and/or carry 20 pounds occasionally, 10 pounds frequently. She can stand and/or walk, with normal breaks, for a total of 6 hours per 8-hour workday, and can sit, with normal breaks, for a total of 6 hours per 8-hour workday. She needs a sit/stand option at 30 minutes intervals while remaining at the workstation. In terms of postural limitations, she can never climb ladders, ropes, or scaffolds, but she can occasionally climb ramps and stairs, kneel, stoop, crouch and crawl. She can frequently reach in all directions with the bilateral upper extremities. She can frequently push/pull with the bilateral upper extremities.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on January 29, 1968 and was 52 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from November 15, 2014, the alleged onset date, through June 30, 2020, the date last insured (20 CFR 404.1520(g)).

[Tr. 18–27].

## III.     STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

4

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a

5

continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. § 404.1520(a)(4), (e). An RFC is the most a claimant can do despite his limitations. *Id.* § 404.1545(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

V. ANALYSIS

Plaintiff alleges the ALJ committed five errors in his decision denying Plaintiff benefits, including that: (1) "The ALJ's decision does not contain adequate supporting rationale for the decision's '[Paragraph] B' criteria findings"; (2) "The ALJ improperly addressed [the] medical source opinions"; (3) "The ALJ failed to consider [Plaintiff's] ability to perform full time work, 8 hours a day, 5 days a week"; (4) "The ALJ failed to properly analyze [Plaintiff's] major medical impairment of fibromyalgia"; and (5) the ALJ improperly "announced at the hearing that he would

6

not consider [Plaintiff's] credibility, but only whether or not her testimony [was] consistent with the objective medical evidence" [Doc. 12 p. 2 (emphasis omitted)]. Plaintiff's argument regarding the ALJ's evaluation of the Paragraph B criteria pertains to the ALJ's analysis at step two in the sequential process. Plaintiff's remaining arguments relate to the ALJ's RFC determination, including his evaluation of both the relevant medical opinions and Plaintiff's symptoms.

In response, the Commissioner argues that the ALJ properly evaluated the Paragraph B criteria at step two and that, regardless, any error by the ALJ was harmless because the ALJ considered and discussed Plaintiff's mental impairments later in his analysis when evaluating Plaintiff's RFC [Doc. 16 p. 5]. The Commissioner argues that substantial evidence also supports the ALJ's evaluation of Plaintiff's RFC determination [*Id.* at 5]. According to the Commissioner, the ALJ "sufficiently considered the persuasiveness of the opinion evidence along with the record as a whole" [*id.* at 6–10], properly evaluated Plaintiff's subjective complaints by considering several relevant factors along with the opinion evidence [*id.* at 10–15], and "[a]lthough Plaintiff may disagree with the ALJ's conclusions, her mere disagreement is insufficient to warrant remand" [*id.* at 15 (citations omitted)].

Turning first to Plaintiff's argument that the ALJ "improperly addressed" the opinion of Plaintiff's treating physician, Kenny Sizemore, M.D. ("Dr. Sizemore") [Doc. 12 pp. 14–15], the Court finds that the ALJ's evaluation of Dr. Sizemore's opinion is not supported by substantial evidence. The ALJ found Dr. Sizemore's opinion unpersuasive, reasoning:

> Dr. Sizemore completed a medical source statement in November of 2019. Pursuant to 20 CFR section 404.1520c, I have considered the relationship that Dr. Sizemore has with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment, the extent of the treatment and the examining relationship. However, the limits given by Dr. Sizemore in his opinion are based on claimant's subjective complaints regarding off task, absenteeism, sleep disturbance and non-restorative sleep. Indeed, after

7

thoroughly examining the claimant's objective medical evidence, it is clear that Dr. Sizemore's reaching, handling and fingering limits are not supported by the objective medical evidence of record.

> For instance, during Dr. Summers' exam, the claimant demonstrated normal strength, normal sensation, and normal reflexes in her upper and lower extremities along with normal grip strength. (Exhibit 6F). Similarly, during Dr. Blaine's exam, the claimant exhibited normal sensation, normal strength, and normal deep tendon reflexes in her upper and lower extremities. (Exhibit 8F). During physical exams in 2019, the claimant exhibited only mild degenerative changes in her hands with no synovitis. She had normal range of motion in her shoulders, hips, knees, wrists, hands, and ankles. (Exhibit 9F at pp. 16-21). In November of 2019, treatment notes stated that the claimant had normal muscle strength with no evidence of any swelling, warmth, tenderness, or redness in her upper extremities. In May of 2020, the claimant exhibited normal range of motion in her bilateral shoulders, elbows, wrists, and hands. (Exhibit 12F at pp. 3-5, 10). Likewise, in December of 2020, she reported minimal swelling in her hands, and she had normal range of motion in her shoulders, elbows, wrists, hands, hips, knees, and ankles with no synovitis, swelling, effusion, warmth, or edema. (Exhibit 13F at pp. 4-5). Thus, the functional limitations in this opinion are not consistent with the overall medical evidence of record. In addition, the evidence does not support Dr. Sizemore's limitations on the claimant's upper extremities. Accordingly, this opinion is not persuasive.

[Tr. 24–25].

Plaintiff argues that the ALJ erred in his evaluation of Dr. Sizemore's opinion because "Dr. Sizemore treats Plaintiff for fibromyalgia" and "fibromyalgia symptoms are largely subjective" [Doc. 12 p. 14]. Plaintiff also references *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 244 (6th Cir. 2007), for the proposition that "fibromyalgia is an elusive and mysterious disease which causes severe musculoskeletal pain" and "[f]ibromyalgia patients manifest normal muscle strength and neurological reactions and have full range of motion" [Doc. 12 pp. 6–7; 14]. Further, Plaintiff argues that "Dr. Sizemore's Fibromyalgia Functional Capacity Statement is consistent with the medical evidence of record and with Dr. Summers' opinion," which "produced similarly situated findings as that of treating rheumatologist Dr. Sizemore" [*Id.* at 14–15].

8

The Commissioner responds that "the ALJ sufficiently considered the persuasiveness of the opinion evidence along with the record as a whole" [Doc. 16 p. 6]. Specifically, the Commissioner argues that "[t]he ALJ acknowledged and considered Dr. Sizemore's treating relationship with Plaintiff, but found that the doctor's suggested limitations were unsupported by the doctor's own examination findings and inconsistent with the overall medical evidence" [*id.* at 9 (citations omitted)], citing the ALJ's reliance on Dr. Summers' and Dr. Blaine's findings of normal sensation, reflexes, and strength [*id.* (citing Tr. 24, 573–74, 582)],[2] as well as Dr. Sizemore's own findings of only mild degenerative changes in Plaintiff's hands with no synovitis, normal range of motion, normal muscle strength, and no swelling, effusion, warmth, or edema [*id.* at 9–10 (citing Tr. 24, 604, 722, 727, 733)]. The Commissioner argues that "[r]ather than engage with the ALJ's evaluation of Dr. Sizemore's opinion, Plaintiff contends generally that the doctor's opinion was 'consistent with the medical evidence of record and with Dr. Summers' opinion'" [*id.* at 10 (quoting Doc. 12 p. 14)], but that Plaintiff's "mere disagreement with the ALJ's conclusions does not warrant remand even where substantial evidence might support a different conclusion" [*id.* (citing *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006))].

The Sixth Circuit has "recognized on more than one occasion . . . that fibromyalgia patients generally 'present no objectively alarming signs.'" *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 861 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243). "Rather, fibromyalgia patients . . . typically 'manifest normal strength and neurological reactions and have a full range of motion.'" *Id.* (quoting *Preston v. Sec'y of Health & Hum. Servs.*, 854 F.2d 815, 820 (6th Cir. 1988)). Accordingly, the Sixth Circuit has remanded an ALJ's decision for further consideration

---

[2] Dr. Summers and Dr. Blaine performed consultative examinations of Plaintiff on October 22, 2018 [Tr. 571–74], and July 15, 2019 [*id.* at 580–82], respectively.

9

when the ALJ's "entire rationale for discounting the opinions of [physicians who treated a plaintiff for fibromyalgia]" was that there were no supporting objective findings in the record and the physicians' opinions otherwise "appear[ed] to be based entirely on the claimant's subjective complaints." *Id.*

Several lower courts within the circuit have also remanded an ALJ's decision when the ALJ discounted the opinion of a physician who treated the plaintiff with fibromyalgia because of normal objective medical findings in the record and the physician's reliance on the plaintiff's subjective statements. *See, e.g.*, *Fyffe v. Comm'r of Soc. Sec.*, No. 1:21-cv-332, 2022 WL 2176538, at *11–14 (N.D. Ohio June 16, 2022) (finding the ALJ erred in discounting the opinion of the plaintiff's treating physician given the lack of supporting objective findings because "[r]eliance on a lack of corroborative exam findings to discount a treating source's opinion is . . . 'basically irrelevant' and represents a 'fundamental misunderstanding [on the part of the ALJ] of the nature of fibromyalgia'" (quoting *Kalmbach*, 409 F. App'x at 864)); *Beckrow v. Saul*, No. 19-12834, 2021 WL 900558, at *5 (E.D. Mich. Feb. 18, 2021) (finding the ALJ erred by giving greater weight to the state agency medical consultant's opinion than the treating physician's opinion under the rationale that the consultant based his opinion on "careful consideration of the objective medical evidence" (citations omitted)), *report and recommendation adopted sub nom.*, 2021 WL 872086 (E.D. Mich. Mar. 9, 2021); *Lucas v. Comm'r of Soc. Sec.*, No. 18-10087, 2019 WL 1117927, at *6 (E.D. Mich. Feb. 21, 2019) ("[T]he ALJ in this case did not properly assess Dr. Marcus's opinion. The ALJ's basis for rejecting a portion of the opinion is the lack of objective medical evidence supporting the conclusions."), *report and recommendation adopted*, 2019 WL 1112280 (E.D. Mich. Mar. 11, 2019); *Harness v. Berryhill*, No. 3:16-CV-586-DCP, 2018 WL 1586805, at *5–6 (E.D. Tenn. Mar. 30, 2018) (finding the ALJ's decision to discount the treating

10

physician's opinion was not supported by substantial evidence when the ALJ relied on the lack of objective medical findings, a conservative course of treatment, and the physician's apparent reliance on the plaintiff's subjective allegations).[3]

Here, the ALJ found at step two that Plaintiff's fibromyalgia was a severe impairment [Tr. 18]. Despite this finding, the ALJ rejected Dr. Sizemore's opinion solely because his opinions appeared to be "based on [Plaintiff's] subjective complaints" and were "not supported by the objective medical evidence," including Dr. Summers', Dr. Blaine's, and Dr. Sizemore's examination findings that Plaintiff had normal strength, sensation, reflexes, and range of motion [*Id.* at 24–25]. The ALJ erred in relying on the lack of objective medical findings, as "the absence of objective medical evidence to substantiate the diagnosis of fibromyalgia or its severity is

---

[3] These decisions applied the treating physician rule applicable to claims filed prior to March 27, 2017, in which "a treating physician's opinion [was] due 'controlling weight' if that opinion [was] 'well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in [the] record.'" *Underwood v. Soc. Sec. Admin.*, No. 3:16-cv-00546, 2017 WL 128518, at *5 (M.D. Tenn. Jan. 11, 2017) (citing 20 C.F.R. § 404.1527(c)(2) (last alteration in original)). For claims filed on or after March 27, 2017, the treating physician rule no longer applies and an ALJ must instead, "evaluate the persuasiveness of medical opinions and prior administrative medical findings" using five factors, the most important of which are supportability and consistency. 18 U.S.C. § 404.1520c(a), (b)(2). Under the updated regulations, courts have continued to find an ALJ commits reversible error when they discount the medical opinion of a physician who treats a plaintiff with fibromyalgia because of a lack of objective medical findings. *See, e.g., Jones v. Comm'r of Soc. Sec.*, No. 1:21-CV-01309-SO, 2022 WL 3567412, at *12 (N.D. Ohio July 20, 2022) (finding the ALJ's evaluation of the plaintiff's treating physician was erroneous under the updated regulations when the ALJ rejected the opinion because the physician's opined limitations "appear to be largely based on the claimant's subjective reports" and the objective medical evidence did not support such limitations), *report and recommendation adopted sub nom.*, 2022 WL 3566791 (N.D. Ohio Aug. 18, 2022). This Court will do the same. *See Beckrow*, 2021 WL 900558, at *3 n.2 ("[T]reating physicians' opinions about a claimant with fibromyalgia should continue to carry special weight even under the new rules given the lack of relevance of objective evidence. When a claimant alleges disability because of fibromyalgia, courts should remain critical of ALJ decisions that rely more on the record-review opinions of state agency experts than on opinions from treating physicians, especially rheumatologists.").

11

basically irrelevant." *Kalmbach*, 409 F. App'x at 861; *see also id.* at 864 ( "[F]ibromyalgia patients . . . typically 'manifest normal muscle strength and neurological reactions and have a full range of motion.'"). The ALJ similarly erred in finding that Dr. Sizemore relied on Plaintiff's subjective complaints. *See id.* at 861–62 (finding the ALJ erred by stating that the treating physician's opinion "appear[s] to be based entirely on the claimant's subjective complaints"). Regardless, Dr. Sizemore relied on more than just Plaintiff's subjective complaints, as he documented Plaintiff's longitudinal record of positive tender points,[4] as well as her chronic pain and fatigue[5] [Tr. 718 (opining that Plaintiff's fibromyalgia results in chronic widespread myofascial pain and chronic fatigue)]. *See Jones*, 2022 WL 3567412, at *15 ("[I]t is an overstatement that [the plaintiff's physician] based her opinion on [the plaintiff's] own reports" as she "provide[d] a brief description of [the plaintiff's medical history, objective findings to confirm the past diagnoses, and current symptomology in support of her opined limitations").

Since the ALJ discounted Dr. Sizemore's opinion solely based on the lack of corroborating objective medical findings and relied on Plaintiff's subjective complaints, the ALJ's evaluation of

---

[4]  Dr. Sizemore documented Plaintiff's record of positive tender points on several occasions [Tr. 604 (documenting Plaintiff's tender points on May 15, 2019); *id.* at 608 (stating on November 20, 2019 that "[a] [c]omplete myofascial tender point exam was not done, but this had been clearly documented in the past and there is no question that she has fibromyalgia")].

[5]  Dr. Sizemore documented Plaintiff's history of chronic pain and fatigue at several points in time [Tr. 586, 587 (documenting Plaintiff's pain and fatigue on July 20, 2012); *id.* at 591 (noting Plaintiff's "increasing musculoskeletal pain" and feelings of tiredness on September 18, 2012); *id.* at 594 (stating Plaintiff was seen on February 26, 2014, for a follow-up on myofascial pain, in particular back pain and lower extremity pain, and that she was "feeling tired"); *id.* at 597 (noting on April 14, 2015, that "[Plaintiff] is being seen for worsening symptoms of back pain" and was "feeling tired"); *id.* at 601, 602 (stating on May 15, 2019, that Plaintiff "is a 51-year-old female with fibromyalgia" that reestablished care with Dr. Sizemore after four years because of "chronic pain" and that her "diagnoses of fibromyalgia and osteoarthritis with psoriasis has become more apparent"); *id.* at 606 (documenting on November 20, 2019, that Plaintiff has "[f]airly stable myofascial pain" and was "feeling tired")].

Dr. Sizemore's opinion is not supported by substantial evidence. *See id.* at *15 ("Because the ALJ did not provide due consideration to Ms. Jones' diagnoses of fibromyalgia and SLE, substantial evidence does not support her findings."); *Harness*, 2018 WL 1586805, at *5–6 (finding the ALJ's reliance on the lack of objective medical findings, a conservative course of treatment, and the physician's reliance on the plaintiff's subjective allegations did not provide substantial evidence to discount the physician's opinion). While the Commissioner argues to the contrary, the Commissioner relies on the same "normal" medical findings from Dr. Summers', Dr. Blaine's, and Dr. Sizemore's reports that the ALJ erred in relying upon it [Doc. 16 pp. 9–10]. Remand is therefore warranted.

Because the Court is remanding this matter for further evaluation of relevant medical opinion evidence, the Court declines to address Plaintiff's arguments regarding the ALJ's evaluation of the remaining medical opinions as well as Plaintiff's argument regarding the ALJ's evaluation of the Paragraph B criteria. *See Jaworski v. Astrue*, No. 1:10-CV-02936, 2012 WL 253320, at *6 (N.D. Ohio Jan. 26, 2012) (declining to consider whether the ALJ erred in his evaluation of the plaintiff's mental impairments at step two because the ALJ erred in evaluating the opinion evidence). The Court also declines to address Plaintiff's arguments regarding the ALJ's evaluation of Plaintiff's symptoms, as proper analysis of Dr. Sizemore's opinion may, in turn, impact the evaluation of Plaintiff's symptoms. *See Smith v. Kijakazi*, No. 0:20-CV-00092-CHB, 2021 WL 6118659, at *6 (E.D. Ky. Dec. 27, 2021) ("The Court declines to address Smith's credibility argument at this time since the ALJ's credibility determination may change upon proper evaluation of Dr. DeLawrence's medical opinion." (citing 20 C.F.R. § 416.929(c)(2), (3))).[6]

---

6  Plaintiff also asserts that the consultative examiners, Dr. Summers and Dr. Blaine, were not provided with the relevant medical records prior to their examinations, including the records

13

On remand, the Commissioner shall issue a decision consistent with this opinion. The Court's opinion is not intended, however, to limit the scope of the remand or the issues to be addressed. *See* 20 C.F.R. § 404.983 (setting forth the Commissioner's avenues of recourse on remand and stating that "any issues relating to [Plaintiff's] claims may be considered by the Appeals Council or [ALJ] whether or not they were raised in the administrative proceedings leading to the final decision in the case"); *see also Hollins v. Massanari*, 49 F. App'x 533, 536 (6th Cir. 2002) (finding the ALJ was permitted to reconsider any issue related to the claim on remand provided the remanding court did not decide the issue or otherwise limit the scope of the remand (citing 20 C.F.R. § 404.983)); *Drossman v. Comm'r of Soc. Sec.*, No. 3:07CV00376, 2008 WL 1848202, at * 6 (N.D. Ohio Apr. 17, 2008) (finding that "*Hollins* explicitly allowed ALJs receiving a case on remand to move beyond the issues examined in the district court opinion" and "an ALJ should not feel constrained to only consider the limited issues previously presented and specifically remanded for further consideration"); *Killings v. Colvin*, No. 1:15-CV-1290, 2016 WL 2868699, at *12–13 (N.D. Ohio May 17, 2016) (same).

---

from Plaintiff's former rheumatologist [Doc. 12 pp. 17–18; Doc. 17 pp. 1–2]. The Commissioner responds that, "[t]o the degree that Plaintiff believes the state agency failed to follow certain regulations related to obtaining consultative examinations, she has not identified any error in the *ALJ's* evaluation of the resulting opinions" [Doc. 16 p. 8]. Under 20 C.F.R. § 404.1517, the Commissioner must "give the [consultative] examiner any necessary background information about [a claimant's] condition." *See Brantley v. Comm'r of Soc. Sec.*, 637 F. App'x 888, 894–95 (6th Cir. 2016) (interpreting "background information" as including relevant medical records). The records-in-question appear to have been received by the state agency on September 25, 2018 [*Id.* at 97]. Dr. Summers performed his examination on October 22, 2018 [*id.* at 572], but his report fails to indicate whether he was provided any of Plaintiff's prior records [*id.* at 572–74]. Despite Plaintiff raising the issue to the ALJ at both hearings [*id.* at 40–41, 70–71], and to the Appeals Council [*id.* at 494], it appears that no determination has been made about what records were provided to the consultative examiners or, to the extent they were not provided to the examiners, the impact of such documents being omitted. The Court therefore declines to address the issue so that the ALJ may be addressed on remand.

14

Case 3:22-cv-00223-JEM   Document 18   Filed 06/15/23   Page 14 of 15   PageID #: 874

## VI. CONCLUSION

For the reasons discussed above, the Court will **GRANT** Plaintiff's Motion for Summary Judgment [**Doc. 11**], and **DENY** the Commissioner's Motion for Summary Judgment [**Doc. 15**]. The decision of the Commissioner will be **VACATED AND REMANDED** for further proceedings.[7]

ORDER ACCORDINGLY.

Jill E. McCook
United States Magistrate Judge

---

[7] Although the Court is remanding the case for findings consistent with this opinion, the Court makes no determinations whether Plaintiff should be found to be disabled.